OPINION
{¶ 1} Defendant-appellant Jason Wood appeals from the March 24, 2003, Order of the Coshocton County Court of Common Pleas granting a Civil Protection Order against defendant-appellant.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 31, 2003, appellee Kristine Wood filed a Petition for Domestic Violence Civil Protective Order (R.C. 3113.31) against appellant[1] in the Coshocton County Court of Common Pleas, seeking relief on behalf of herself and her four children. Appellee, in her petition, alleged as follows:
 {¶ 3} "He [appellant] threw me down in the garage and threw a glass bottle at my head. He took his hand and covered my nose and mouth until I passed out. When I woke up he had a gun jammed into my stomach. He said `Welcome to hell.' `This is your night to die, Bitch.' `Where's my son?' `You didn't know who you were fucking with.' Then he put the gun into my chest and said `No this won't work you're heartless. He then caulked (sic) his gun and put it to my head asking me again where Dylan was. When I wouldn't answer he said okay you're time to die has come but I'm not going to jail for it. I've already told everybody tonight that you're suicidal. He then put the gun up to my mouth and kept taking my hand and trying to put my finger on the trigger telling me to put everybody out of their misery and kill myself that everybody hated me and loved him to just do it and pull the trigger. I told him I wasn't doing it and because his hand was on mine making me pull the trigger gun powder would be on his hands too. He said don't worry about it. I'll take a little battery acid and it'll wash right off. He said besides it'll be days before anyone starts looking for you. He finally put the gun away and for the next 2 — 3 hours he sat on my chest holding my arms above my head putting his hand over my nose and mouth so that I couldn't breathe. He took his fingers and put them into my neck so that I could not breathe. He put his thumb up under my jawbone. He put his knuckles into my back where my lungs were so that I couldn't breathe. He pushed his hands into my abdomen and chest causing me not to be able to breathe the entire time he was telling me `don't worry what I do doesn't leave marks.' I was not able to move or do anything from midnight to 5 a.m. When he finally let me go to bed he took off my jeans and shirt and kept one arm over me so that I could not go anywhere."
 {¶ 4} The trial court granted appellee's ex parte request for a Temporary Protection Order and scheduled a hearing for March 24, 2003.
 {¶ 5} On February 4, 2003, appellant filed a "Motion to Dismiss Petition for Civil Protection Order." Appellant, in his motion, alleged, in part, as follows:
 {¶ 6} "The Petitioner [appellee] has presented the same facts to the Common Pleas Court of Washington County, who decided after two (2) days of hearings, that the Petitioner's request was not well taken. The Judgment Entry from said Court is attached as Exhibit A.
 {¶ 7} "It is patently unfair for Respondent [appellant] to have to continually defend the same allegations as that were presented in another forum. In essence, Petitioner is forum shopping in the hope of finding a sympathetic venue since she was not successful in her petition in Washington County."
 {¶ 8} Thereafter, a Civil Protection Order hearing was held on March 24, 2003. At the conclusion of appellee's testimony, appellant renewed his Motion to Dismiss on the basis of res judicata, arguing that "[t]estimony from the petitioner clearly indicates that this is exactly the same incident, the same set of operative facts, the same cause of action, that was previously decided by the court in Washington County." The trial court, however, denied both appellant's written motion and appellant's oral motion. As memorialized in an order filed on March 24, 2003, the trial court granted appellee a Civil Protection Order against appellant. The order, which expires on March 24, 2008, also listed appellee's four children as protected persons.
 {¶ 9} It is from the trial court's March 24, 2003, order that appellant now appeals, raising the following assignment of error:
 {¶ 10} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING RESPONDENT/APPELLANT'S MOTION TO DISMISS THE PETITION FOR CIVIL PROTECTION ORDER."
 {¶ 11} This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 12} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form.
 {¶ 13} The instant appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 14} Appellant, in his sole assignment of error, argues that the trial court erred in denying appellant's Motion to Dismiss the Petition for Civil Protection Order on the basis of res judicata. Appellant specifically contends that the doctrine of res judicata was applicable since appellee "had previously filed a Petition for Civil Protection Order in another County [Washington County] which was dismissed with prejudice and the Petitioner [appellee] re-filed in another County [Coshocton] alleging the same facts as were previously presented and ruled upon."
 {¶ 15} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Grava v. ParkmanTownship, 73 Ohio St.3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226
(citations omitted). Furthermore, "[i]t has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit'." National Amusement, Inc. v. Springdale
(1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (citation omitted). Accordingly, "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Id.
 {¶ 16} As is stated above, appellant filed a Motion to Dismiss appellee's Petition for Domestic Violence Civil Protective Order on the basis of res judicata. Attached to appellant's motion was a copy of a Journal Entry from the Washington County Court of Common Pleas dismissing, with prejudice, appellee's request for a Civil Protection Order. The Washington County Court of Common Pleas, in such entry, stated, in relevant part, as follows:
 {¶ 17} "The above styled action came on to the Court for trial on November 14 and 21, 2002. The Petitioner, Kristina L. Wood, filed a Petition for Domestic Violence, Civil Protection Order on November 7, 2002. On November 7, 2002, and at all times relevant herein, the Petitioner was a temporary resident of Washington County, Ohio.
 {¶ 18} "At the time this Petition was filed, the Petitioner submitted an Affidavit in excess of 19 pages. On November 14, 2002, the Petitioner, Kristina Wood, testified that on the evening of October 28 and into the morning of October 29, 2002, she was held in the parties' home by the Respondent for over 8 hours. She stated that at one point, the Respondent placed a gun in her mouth and tried to get her to place her hand on the gun so that it would like she committed suicide. He allegedly suffocated her and threatened to throw her off of a wall. Earlier in the month, the Petitioner claimed that the Respondent broke her toe, but to date she has not sought medical attention for this. She was taken to the hospital after the incident on October 28, but was not admitted. She did not report any injury to her toe at this time either. She did have bruising from the incident of October 28, 2002. She testified that she and Mr. Wood have resided together for five years, are not married, and have one child together."
 {¶ 19} The Washington County Court of Common Pleas, in its Journal Entry, found that appellee, who did not testify at the hearing before it, had failed to support her case by a preponderance of the evidence.
 {¶ 20} At the March 24, 2003, hearing in the case sub judice, the following testimony was adduced when appellee was asked whether the incident that she was testifying at such hearing about was "the exact same incident that you testified earlier in Marietta (Washington County)":
 {¶ 21} "A. I'm sure I have left out some things. I know that he made me a human pretzel, and I didn't testify to that.
 {¶ 22} "Q. Please listen to the question.
 {¶ 23} "A. No
 {¶ 24} "Q. This is not the same incident?
 {¶ 25} "A. Exact thing word for word that I said, no.
 {¶ 26} "Q. That's not what I'm asking, ma'am. Please pay attention. Is this the same incident that you previously testified to in Marietta?
 {¶ 27} "A. Same incident, yes.
 {¶ 28} "Q. October 28th, October 29th; is that correct?
 {¶ 29} "A. Correct
 {¶ 30} "Q. This is the same incident that you testified to at the grand jury[2]; is that correct?
 {¶ 31} "A. That is correct.
 {¶ 32} "Q. Okay. And you had an opportunity to present under oath evidence in Marietta County; is that correct?
 {¶ 33} "A. Correct
 {¶ 34} "Q. Okay. And it's apparently the same Jason Wood; is that correct?
 {¶ 35} "A. Yes.
 {¶ 36} "Q. Not a mistaken identity; is that correct?
 {¶ 37} "A. I wouldn't know. I'm not — —
 {¶ 38} "Q. And you are making the same allegations today as you did then as it relates to the domestic violence and being held against your will; is that correct?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. And you are acknowledging that there is a possibility that there was a some information that you did not testify to down there or adding to your testimony here today? Is that correct?
 {¶ 41} "A. I don't understand what you are asking me.
 {¶ 42} "Q. You are adding testimony that you didn't provide — —
 {¶ 43} "A. — No, I don't think I'm adding. I think I probably said more in Marietta because it hasn't — it was closer to the event that it happened. It's been five months.
 {¶ 44} "Q. Okay. And you had submitted a very lengthy affidavit initially with your application in Marietta; is that correct?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. And that application was or that affidavit was made under oath; is that also correct? You swore before a notary public that everything contained within it was true?
 {¶ 47} "A. yes.
 {¶ 48} "Q. There really wasn't much fundamental difference between your affidavit down in Marietta and the testimony then ultimately presented at the court hearing, correct?
 {¶ 49} "A. No. That would have been the same evidence. Transcript at 39-41.
 {¶ 50} Based on the foregoing, we find that the trial court erred when it denied appellant's oral and written Motion to Dismiss on the basis of res judicata[3]. Based on appellee's testimony, it is apparent that appellee previously tried, unsuccessfully, to obtain a Civil Protection Order in Washington County, Ohio, and, after failing to do so, filed a request for a Civil Protection Order in Coshocton County. We find, therefore, that appellee's Petition for a Civil Protection Order in the case sub judice was barred by the doctrine of res judicata.
 {¶ 51} Appellant's sole assignment of error is, therefore, sustained.
 {¶ 52} Accordingly, the judgment of the Coshocton County Court of Common Pleas is reversed. Pursuant to App.R. 12(B) we enter final judgment dismissing appellee's Petition for a Civil Protection Order in the case sub judice.
By: Edwards, J., Hoffman, P.J. and Wise, J. concur.
[1] Appellant and appellee are not, and have never been, married.
[2] After the Washington County Court of Common Pleas dismissed appellee's petition for a Civil Protection Order, the matter was investigated by the Grand Jury and criminal charges were subsequently filed against appellant.
[3] In Sterling v. Sterling, Fairfield App. No. 02CA8, 2002-Ohio-4997, this Court opined that the doctrine of res judicata applies in the context of civil protection orders. In Sterling, the Muskingum County Court of Common Pleas dismissed a wife's petition for a Civil Protection Order. The wife then obtained a Civil Protection Order from the Fairfield County Court of Common Pleas.
The husband then filed a motion to dismiss on the basis of res judicata, attaching the decision of the Muskingum County Court of Common Pleas. At the hearing before the Fairfield County Court of Common Pleas, the wife's witnesses testified that they were testifying to essentially the same testimony as the Muskingum County proceedings. This Court, in our opinion, held as follows: "Without the record of the Muskingum County proceedings before it, the trial court sub judice could not determine what the Muskingum County civil protection order petitions involved and what the Court of Common Pleas of Muskingum County heard in evidence in order to rule on appellant's motion to dismiss on the basis of res judicata. The matter is remanded to the trial court to certify the record from the Court of Common Pleas of Muskingum County for review and rule on the issue of res judicata."
In the case sub judice, a detailed entry from the Washington County Court of Common Pleas was attached to appellant's Motion to Dismiss, outlining the allegations made in such case.